'The opinion of the court was delivered by
McEnery, J.
The plaintiff and defendant are street railway corporations.
The latter was in position on Oarrollton avenue, when a change of route was granted to the plaintiff corporation to run through the same street on the neutral ground. This expression “neutral” ground has occasioned some confusion in the interpretation of the grant to plaintiff. Neutral ground had its origin in its application to the unclaimed part of Canal street, which was the dividing line between two municipalities. It has no significance in its application to other streets. The centre of Carrollton avenue was occupied by a gravel road before the defendant’s road was located thereon. On ■either side there was a wide space unoccupied, but used at times as a playground. The City Engineer located the plaintiff’s road under the grant to them to pass through Oarrollton avenue on' what he then construed to mean the neutral ground. This location was accepted by the plaintiff and it commenced work for the construction of its track as located. This location did not interfere with the defendant’s tracks. The plaintiff, for some reason, abandoned work -on its location, and about a year afterward the City Council, by ordinance, declared the neutral ground to be the centre of the street through which the defendant’s railway was located. In this ordinance there is no grant to the plaintiff’s road to run over the tracks of the defendant.
In plaintiff’s brief it is stated that the facts make a street a neutral .ground, and not any ordinance of the City Council.
To the time that the ordinance delaring the centre of the avenue, ■on which defendant’s road was located, neutral ground, the neutral ground cf the avenue was the unoccupied part of the street. This is the testimony of the City Engineer. Williams, an engineer, who had always lived in Carrollton, and'on Carrollton avenue, says in his ■■testimony that when the grant to plaintiff was made the sides of Car *858 rollton avenue were grass-grown and used as a playground, which up to 1892 was considered as neutral ground, so far as appearance» warranted such, designation.
From his earliest recollection the centre of the avenue was occupied by a roadway until á graveled roadway was built. It was after the making of this gravel road that the defendant’s road was constructed on it. Therefore there is no force in the argument, because a part of what was once neutral ground is now graveled and improved, it could not have been the intention of the city government-to permit a road to be built on it.
There is no question of the intention of the Oity Council involved! in this question. It is a fact at issue whether or not the-geographical features of the avenue are such as to comp.-l the occupancy of defendant’s roadbed. If they are not of that character, no grant by implication can’be inferred.
The grant to the plaintiff is that it shall construct its road on Second from Broadway fo Carrollton avenue, thence through the neutral ground of Carrollton avenue to Fourth street, and thence along Fourth to the parish line. There was no legislation declaring any part of the street neutral ground when this ordinance was passed, and the passage of the ordinance subsequently is an evidence that, no designation had been given by the city to any part of the street as neutral ground. The only neutral ground to which the ordinance-could apply was to the unoccupied part of the street.
The ordinance could not, after the grant, by simply designating a part of the street neutral ground, give any additional powers not conferred by the ordinance. Nor-could it thus authorize, by mere implication, the plaintiff to occupy a part of the street, which right had not been previously conferred.
After the passage of the above ordinance, the plaintiff corporation attempted to go on defendant’s tracks, and invoked the proceeding» in this suit to expropriate the roadbed, cross-ties, etc., necessary for its occupancy of the defendant’s tracks.
The question at issue is, can a street railway company, occupy the-track of another, unless by express authority or by necessary implication.
In several cases we have decided that by special grant of legislative authority, one railway company, to reach its destination to its-terminal point, may occupy ¡the tracks of an existing company. .In, *859 the grant to the plaintiff this doctrine was recognized, as authority is [given them] to cross and occupy certain tracks until they reach Carrollton avenue.
But as to Carrollton avenue there is no authority granted to occupy the track of the defendant corporation. Was then this permission given by necessary implication?
On this point we are without precedents in our jurisprudence. But as the decrees in the cases of Railroad Company vs. Railroad Company, 41 An. 564; Railroad Company vs. Railroad Company et al., 44 An. 490; Railroad Company vs. Railroad Company, 44 An. 54; Railroad Company vs. City, 44 An. 730; Railroad Company vs. City, 44 An. 748; Railroad Company vs. Railroad Company, 44 An. 1071, were based on the authorities from other States, which had preceded us in street railway facilities, this court ought to look to the authori-' ties in the other States for instruction and for precedents.
In Sharron Railway Company, 9 American State Rep., 133, it was held, to justify the taking by one railroad company for the same use, under the right of eminent domain, the land acquired by another com - pany, which is necessary for the latter to economically and expeditiously carry on its present and prospective business, that there must be a necessity so absolute that without it the grant itself would be-defeated, and not a necessity created by the company itself for its-own convenience or sake of economy.
In this ease no question can arise as to Che impairment of the obligation of a contract, except so far as stated in case of Railroad Company vs. Railroad Company, 44 An. 491, that a street railway occupying the tracks of another can not interfere with the company's road, over whose tracks it runs its cars, so as to disturb its schedule time, in accordance with its contract with the city, and thus practically evict it from its roadbed. And here we will state that the necessity for express permission by the City Council, or an implication from the authority granted, exists, so that the schedule time of the road first occupying the street can not be interfered with.
In granting the authority the city must undoubtedly have the opportunity of so expressing itself as to shield itself from damages.
In the collation of the authorities in the case referred to, under the head of “How Legislative Intent must be Expressed,” we find it stated and amply supported by citation of authorities that an “ implication does not arise except from the language of the legislative *860 act, or from its being shown by an application of the act to the subject matter to be a necessary condition to the beneficial enjoyment and efficient exercise of the powers expressly granted, and then only to the extent of the necessity.” “There can be no implication,” says the Supreme Court of Pennsylvania, in speaking of the right of a railroad company to take by implication a portion of the road of a street railway, “unless it arises from a necessity so absolute that without it the grant itself will be defeated. It must also be a necessity that arises from the very nature of things over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience or for the sake of economy. Pennsylvania Railroad Company’s Appeal, 93 Pa. St. 150; Appeal of Pittsburg Junction R. R. Co., 122 Pa. St. 511.”
In the matter of the City of Buffalo, 68 N. Y. 167; 118 Mass. 391-561.
Alexandria & Fredericksburg Railway Company vs. Alexandria & Washington Railroad Company, 40 Amer. R. 743, and cases cited in note.
The several cases referred to herein in our reports, and the invariable doctrine announced in the other States of the Union is that a street [railway company owns the structure laid by it in the highway and have a superior right to the space covered by its tracks, Pierce Railroads, 252; Woods Railway Law, Sec. 229, p. 681; 14 Gray, 69; 76 N. Y. 530; 34 Iowa, 527.
And its rails can not be used by other competing common carriers, driving railway carriages without special legislative authority. Woods Railway Law, 681; 72 N. Y. 330; 4 Stew. (N. J.) 525; 81 Ill. 523.
On page 681, Woods Railway Law, it is stated that “ a franchise can not be taken under the general law, but must have for its basis legislative authority, or must arise from necessary implication.”
And on page 703, the same authority says: “In the construction of railways, it necessarily occurs that highways and other railways must be crossed, and although the power is not expressly given, it is necessarily inferred. But authority to take the bed of either a highway or railway longitudinally for any considerable distance will not be inferred, especially when it is possible to build the road without doing so.” As a conclusion from all the authorities, the same author thus expresses what is a permission by implication to interfere with *861 the franchise of an elder grant: “If, however, the two grants can not stand together, and npon an application of the grant to the subject matter it is found that the latter will be defeated unless it is permitted to interfere with the franchises of another corporation, the presumption is raised that such interference was contemplated by the Legislature” (p. 699).
In the instant case there was no permission granted to plaintiff to use the rails or roadbed of the defendant company. There is nothing in the situation of the locality which both railways are permitted to occupy to justify a permission by implication to use defendant’s roadbed and tracks, or to disturb its franchises.
The only unoccupied ground which could be designated as neutral was that on either side of defendant’s tracks. This neutral ground was accepted by plaintiff as the territory it wasto occupy. Tbe subsequent resolution of the Council simply declaring the space occupied by defendant as neutral ground was an absurdity, as the Council could not change the meaning of words, and, as said in plaintiff’s brief, make that neutral ground, which, in fact, was not. The testimony in the record shows that the space first allotted to plaintiff’s road is sufficient for its purpose; will not interfere with defendant’s franchise; and will not interrupt or disturb the use of the street or avenue.
There is not an authority anywhere that does not hold that the grant to occupy the tracks of a railroad company by another competing company by implication, the implication must be such that the grant would be defeated without the use of the tracks. Here the competing company has a large space to occupy without interfering with the defendant’s franchise.
What is the franchise granted to defendant? It is that it may construct a road through Carrollton avenue on unoccupied territory. There is not a word said about the use of defendant’s road bed, and the use of .defendant’s track does not spring from any necessary implication, as there is ample territory assigned to plaintiff to construct its road without interfering with defendant’s roadbed.
Judgment affirmed.