(44 South. 457.)

No. 16,311.

SHREVEPORT TRACTION CO. v. KANSAS CITY, S. & G. RY. CO.

(March 18, 1907. On Rehearing, June 10, 1907.)

1. MUNICIPAL CORPORATIONS — POWER TO GRANT USE OF STREETS.

City authorities have no legal power to create corporations or to grant franchises. This can be done by the state alone; but the city can concede the right of way through her streets. Such right is not a franchise in law. The privileges conceded are "secondary franchises," instrumentalities by means of which the corporate owners granted by the charter may be exercised.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 11; vol. 36, Municipal Corporations, § 1459.]

2. RAILROADS—DETERMINATION OF CHARACTER OF CORPORATION—ABANDONMENT OF RIGHTS AS RAILROAD CORPORATION.

In determining what the character of the corporation is,. reference must be had to its charter, and not to the relation which may have been established between itself and the city by permit or license, or by contract. If by its charter it is a railroad corporation, its rights as such are not waived, or forfeited, or abandoned, by entering into relations with the city for operating lines of street cars inside the city limits. Between the city and the company the relations entered into may control the situation as to the operation of its cars; but, when the company extends its line beyond the city under its right to do so reserved in the charter, the city has no control over it. Quoad its extension the character of the company is to be held to be a railroad company, entitled to its privileges as such, and bound by its obligations to the general public.

3. STREET RAILROADS — CONSOLIDATION OF COMPETING ROADS—INTEREST TO CONTEST.

Where defendant does not pretend that the route of the plaintiff corporation outside of the city limits is parallel with and competes with its own, or that its business is affected by the fact that the plaintiff is a corporation resulting from the consolidation of two corporations operating lines of street cars in the city of Shreveport, defendant has no interest in contesting the consolidation of the two companies on the ground that the lines of the two companies in the city were to some extent parallel and competing with each other.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 446.]

4. EMINENT DOMAIN—DELEGATION OF POWER. —EXERCISE BY STREET RAILROAD CORPORATIONS.

The term "railroad" is a broader term than the term "street railway"; but it does not exclude under it "street railways." "Railroad" is a generic term, under which "street railways" fall as a species, unless by the text of a law, in which the former term is used, it appears that the intention of the lawmaker was not to include in it the latter kind of railroads. Such could not have been the intent of the General Assembly in using the word "railroad" in sections 683 and 698 of the Revised Statutes. It is expressly provided in the fourth section of Act No. 100, p. 125, of 1898, that under a consolidation of two companies the consolidated company has the right to do all acts and other things which said companies so consolidated, or either of them, might have done previous to the consolidation. The right of the consolidated company in this instance did not result from the consolidation, but went into the consolidation as a pre-existing right.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 67; vol. 41, Railroads, § 448.]

5. SAME — PROPERTY SUBJECT TO APPROPRIATION — PROPERTY PREVIOUSLY DEVOTED TO PUBLIC USE.

The plaintiff in this suit does not seek to obtain the ownership of any property of the defendant. It only prays to have decreed to it a right of way or crossing over its tracks at a particular point at occasional periods; an easement which, in view of the fact that defendant is itself operating a road for public use, is subject to be altered or modified to conform to future exigencies and contingencies. The demand of the plaintiff is granted, and the verdict of the jury affirmed as to existing conditions, under reservation of defendants' rights which may arise under future changing conditions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 234, 246.]

On Rehearing.

6. SAME.

The power of a railway to cross highways and other railroads is necessarily implied from the law authorizing its construction. In this particular railways for the local transportation of passengers, such as street and electric lines,.

cannot be justly differentiated from commercial railroads.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, §§ 112, 114.]

7. STREET RAILROADS—INCORPORATION.

A street railway and an electric railroad designed to run beyond the municipal limits may be incorporated under the same charter.

8. CORPORATIONS—VALIDATION OF IRREGULAR INCORPORATION.

Even if the plaintiff consolidated railroad had been irregularly organized, its incorporation was validated by Act No. 120, p. 281, of 1904.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 70.]

9. STREET RAILROAD—REGULATION—OVERHEAD CROSSING.

In the absence of legislation, the courts cannot annex to the expropriation of a grade crossing the condition that the plaintiff shall, in the present or future, cross by means of an overhead bridge.

Monroe, J., dissenting in part.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Suit by the Shreveport Traction Company to expropriate from the Kansas City, Shreveport & Gulf Railway Company a crossing over the latter's right of way. From a judgment declaring the right of plaintiff to cross and fixing the amount to be paid defendant, defendant appeals. Affirmed.

Alexander & Wilkinson, for appellant. Wise, Randolph & Rendall and Sutherlin & Barret, for appellee.

### Statement of the Case.

NICHOLLS, J. The plaintiff alleges: That it is a railroad corporation, and was organized, among other things, for the purpose of constructing, maintaining, and operating a line of railway for the carriage and transportation of passengers and property for hire from the city of Shreveport into and through the parish of Caddo, La., along such routes as may be determined by its board of directors, and that in pursuance of a resolution of its board of directors it is now engaged in the work of constructing a line of railway from the limits of the city of Shreveport to a point in the Texas or Greenwood road, in said parish, and beyond, along the route shown by map or plat attached hereto and made part hereof, said route having been determined upon and selected by its said board.

That it has secured the necessary ground for right of way purposes along the entire route as proposed, but that it cannot agree with the Kansas City, Shreveport & Gulf Railway Company for the acquisition or purchase of the right to cross with its track the right of way and tracks of the said Kansas City, Shreveport & Gulf Railway Company on certain land in said parish, over, through, and across which petitioner's proposed and contemplated railroad is planned to be built and constructed, and that the right to cross said right of way and tracks of defendant company is necessary for petitioner's use for its said railway purposes, and that it desires and has the right to expropriate and cross over same. That amicable demand was urged in vain, and that petitioner attaches hereto and makes part hereof a map or plat showing the said strip and the said tracks over which it is necessary for petitioner's said line to be built, said strip being thirty (30) feet in width and one hundred (100) feet in length across the property of said defendant, and that there are no improvements on said strip except the tracks as shown by said map or plat.

Petitioner represents that the said Kansas City, Shreveport & Gulf Railway Company is a corporation organized under the laws of the state of Louisiana and domiciled in the city of Shreveport, in said parish, and that its president is absent from the parish of Caddo and jurisdiction of this honorable court, and that Peter Youree, Esq., its vice president, is a resident of said parish and state and present therein.

Petitioner represents that, as shown by the records of said parish, the property over which the right to cross is herein sought to be expropriated is, with other property of the said defendant company, incumbered with mortgage or deed of trust securing a mortgage in favor of the Missouri, Kansas & Texas Trust Company, a corporation organized under the laws of the state of Missouri and domiciled in the city of Kansas City, as shown by mortgage or deed of trust recorded in Mortgage Book 1, page 274, of the recorder's office of Caddo parish, La.; that the said Missouri, Kansas & Texas Trust Company is a nonresident and has no officers in the state upon whom service can be made.

Plaintiff prays that after due proceedings it have judgment adjudicating to it the right to cross said right of way and tracks of the defendant company upon payment by it into court according to law of the value and damage found by said jury according to law, and that said right to cross pass to petitioner free from said incumbrance and mortgage; further, for all orders and decrees necessary, and for costs and general relief.

Defendant excepted that the plaintiff was not incorporated as alleged, and was not a corporation under the laws of the state of Louisiana, and defendant denies the corporate capacity of said plaintiff and requires strict proof thereof.

Further excepting, defendant says and excepts that said plaintiff, even if incorporated, is not authorized under the laws of the state of Louisiana to expropriate property for its said right of way; the said plaintiff being a street railway company, and not a railroad corporation authorized to exercise the power of eminent domain under the law; and, further, if said plaintiff is incorporated, one of its purposes is of a private nature, and debars it from exercising the power of eminent domain.

Further excepting, defendant says that even if said plaintiff is incorporated, and even if it is authorized by law to expropriate property for right of way, which is specially denied, that even then it has no franchise power or corporate right to build or construct its said line or road outside of the corporate limits of the city of Shreveport; the point sought to be expropriated being outside of the limits of said city.

In view of the premises it prays that these exceptions be sustained, and it be relieved from answering in this case, and for all orders and decrees, for costs, and general relief.

These exceptions were overruled by the court.

The defendant answered. Reserving all exceptions theretofore filed, it denied that the plaintiff has any right under the laws of the state of Louisiana to expropriate the right of way in question, the said plaintiff not being a railroad as provided by law, and the said plaintiff has no right or charter power to build its said line outside of the city of Shreveport, where it is operating a street railway exclusively; that the said plaintiff company is not duly incorporated under the laws of the state, and defendant denies the corporate capacity of the said plaintiff.

Further answering it says: That the crossing proposed to be expropriated is necessary to its efficient operation, and if the crossing in question is permitted that it will practically destroy and ruin the use for which it was acquired by defendant. That it is engaged in preparing to commence work thereon in the enlargement of its yards and shops in the city of Shreveport, and, if a crossing at grade be permitted, that it will make it so dangerous as to amount to a denial of the right to run its cars over said track, owing to the large number of cars, or trains and cars, that will be run over said track daily. That the proposed crossing is at an extreme-

ly dangerous place, and a crossing at grade, and should be denied. That defendant has no objection to an overhead crossing by said plaintiff, and has requested it to so cross the said right of way; but the said plaintiff has refused to accept such crossing.

That defendant has further offered to let the said plaintiff cross at grade free of cost, if it would agree to remove such crossing after 6 months on 30 days' notice, it being the purpose of your defendant to build and equip the said grounds at this point as a part of its yards, and which will be prevented if a crossing at grade is permitted by said plaintiff. That a crossing at grade will greatly damage defendant in the sum of more than $10,000, ruining as it will the availability of the said grounds for an extension of its yard and shops, and the ground sought to be taken is well worth $100, making a total damage to defendant in the sum of $10,100 and more, for which it should have judgment against said plaintiff, in the event of the expropriation of said crossing and the said lands.

That defendant further shows that, while it has now only 2 tracks at the proposed point of crossing, it had planned long prior thereto, and had set aside the funds for the purpose of running a number of other tracks, not less than 12, over the place to be expropriated, which said additional tracks are necessary to it in the extension of its shops and yards, and which work it has planned to do and will commence to do within a short time; and the crossing sought by plaintiff is absolutely needful to it, and if such crossing is allowed defendant will be prevented from using its right of way for the purposes planned and contemplated, and it will ruin said point for the construction of said additional tracks, and, as it cannot construct them at any other point, will force it to abandon the said work, which is imperative, or force it to construct an overhead bridge for said plaintiff company, and the said property, being in use and needful to its use, cannot be taken by said plaintiff.

Wherefore it prays that plaintiff's demands be rejected at its costs, but, in the event of the expropriation of said land, then it prays for judgment against said plaintiff in the sum of $10,100, with interest, and for all orders and decrees, for cost, and general relief.

Defendant subsequently, adopting all the allegations of the original answer and without abandoning its exceptions, offered to file an amended answer in which it alleged in the alternative that, if the crossing in question be permitted to the said plaintiff, it be required to install thereat an interlocking device, and that this matter be therefore referred to the railroad commission of the state, in order to determine the kind of crossing that shall be installed thereat, in accordance with section 3 of its rules and regulations governing the installation and maintenance of interlocking devices at grade crossings, found at page 335 of the Railroad Commissioner's Report in and for the year 1906.

In view of the premises, defendant prays for judgment rejecting the demands of plaintiff, but, if said crossing is permitted, that there be ordered installed thereat an interlocking device, and that the same be referred to the railroad commission for such orders as may be necessary in that regard, or that such order be made by the court herein, and for cost and general relief.

On objection made by the plaintiff, the amended answer was not permitted to be filed, on the ground that no such issue as therein raised could or ought to be submitted to the jury or the court. Defendant filed a bill of exceptions to this ruling. The case was submitted to a jury of freeholders.

On the trial defendant asked the court to give certain special charges to the jury,

which it refused to do, and it reserved a bill of exceptions.

The jury returned the following verdict:

"We, the jury, find for the plaintiff for the right of way as described in plaintiff's petition, and in favor of defendant for $100 for same."

The district court rendered judgment, ordering, adjudging, and decreeing that the plaintiff do have judgment against the defendant, the Kansas City, Shreveport & Gulf Railroad Company, expropriating and adjudicating to the said plaintiff the right of way to cross with its tracks and roadbed the right of way and tracks of said defendant on the strip of ground 30 feet wide and 100 feet long in the S. E. ¼ of the N. E. ¼ of section 3, township 17, range 14, Caddo parish, La., as shown by map or plat annexed to the petition, along the located line of plaintiff, upon the payment by the said plaintiff to the said defendant, or upon the deposit by said plaintiff, subject to the order of said defendant, in the hands of the sheriff of Caddo parish, La., of the sum of $100, the amount of the verdict of the jury herein, and further ordered, adjudged, and decreed that the plaintiff shall construct and properly maintain the crossing herein described at its own cost and expense, and that plaintiff pay all costs of this suit.

Defendant has appealed.

### Opinion.

The defendant in this case excepted that the plaintiff was not incorporated and denied its corporate existence.

We find that on June 10, 1870, a corporation was organized by notarial charter under the name of the "Shreveport City Railway Company." Under its charter and with the permission of the city of Shreveport it built a line of railway in that city, which it continued to operate until down to its consolidation with another corporation, known as the "Shreveport Belt Railway Company."

It appears that on July 31, 1888, a corporation was organized by notarial act, under the name of the "Shreveport Railway & Land Improvement Company," which, under its charter and by permission of the authorities of the city of Shreveport, also built a line of railway in that city. All of the property of this second corporation was seized and sold in August, 1893, under a writ of seizure and sale in the suit of the First National Bank of Shreveport v. Shreveport Railway & Land Improvement Company. A corporation was thereupon organized under Act 36 of 1877, under the name of the "Shreveport Belt Railway Company," to which the purchasers at the judicial sale mentioned transferred all the property rights and privileges which they had acquired at that sale.

In July, 1902, the Shreveport Belt Railway Company and the Shreveport City Railway Company, "with the consent of the stockholders of each corporation, were consolidated under the name of the 'Shreveport Traction Company.'"

It is not suggested in the exception upon what ground this denial of the corporate existence of the plaintiff was predicated. There is no attack upon the legal incorporation of the Shreveport City Railway Company, of the Shreveport Railway & Land Improvement Company, or of the Shreveport Belt Railway Company. In argument it is claimed that the consolidation of the first-named with the last-named corporation was illegal, for the reason that they were parallel competing roads.

Not only is this particular objection not raised in the pleadings, but it is not shown by the evidence. If it be a fact that the two corporations were parallel and competing corporations, that fact is one in pais, of which we have no judicial knowledge. The plaintiff company is at least an acting de facto corporation, as against whose legal existence the state has made no objection,

nor has any one who has an actual, real interest resulting from the asserted fact. The defendant does not allege nor pretend that the route of the plaintiff is parallel to and competes with its own, or that its business is affected by the fact that the two roads may, within the city of Shreveport, to some extent, have been parallel and competing lines. Gaslight Co. v. Hart, 40 La. Ann. 474, 4 South. 215, 8 Am. St. Rep. 544; Orleans & Jefferson R. R. Co. v. Jefferson & L. P. R. R. Co., 51 La. Ann. 1605, 26 South. 278; Shipley v. Commonwealth Railway Co., 13 Phila. (Pa.) 128.

We do not think that the defendant's exception that plaintiff is not incorporated is well grounded.

Defendant urges that, if the plaintiff be incorporated, it was not authorized under the laws of the state to expropriate property for its right of way, as it is a "street railway" company, and not a "railroad" corporation, "authorized to exercise the power of eminent domain."

In an examination for the purpose of ascertaining whether a body asserting itself to be a railroad corporation be legally such, and, if so, what its rights, privileges, and franchises are, we must refer, not to the relations between that body and the city authorities, by whom it has been authorized to construct and operate railway tracks on its streets, either by permit, by way of license, or by way of contract, but to the state laws. The city authorities have no legal power to create corporations or to grant franchises. That power is lodged in the state. What the defendant refers to as "franchises" have not that character in law. They are merely what are known as "secondary franchises"; that is to say, instrumentalities by means of which the corporate powers granted by the charter may be exercised. In Tilton v. Railroad Company, 35 La. Ann. 1069, this court said:

119 LA.—25

"The city does not grant franchises. This can be done by the state alone. But the city can concede the right of way through her streets, public places, and other property."

Farmer v. Myles, 106 La. 339, 30 South. 852, and Muntz v. Algiers & G. Ry. Co., 111 La. 432, 35 South. 624, 64 L. R. A. 222, 100 Am. St. Rep. 495, are substantially to the same effect.

The character of the corporations involved in this case are to be determined by their charters. They are unquestionably public utility corporations, whose creation as such was authorized by section 683 of the Revised Statutes. They were each organized by the number of persons which that section called for. It declares that:

"It shall be lawful for any number of persons not less than six, on compliance with the provisions following, to form themselves into and constitute a corporation for the following purposes, to wit: For the construction, working and maintenance of railroads, canals, plank roads, bridges, ferries and other works of public improvement whether within or without the limits of the state, * * * and generally all works of public utility and advantage."

The general heading to which this particular section belongs is entitled "Corporations," while different groups of sections are made to fall under subheadings. That preceding section (section 683) is entitled:

"Organization of Corporations for Works of Public Improvement and for Other Purposes."

The subheading immediately preceding section 698 reads:

"To Provide for the Expropriation of Lands for Railroads and Other Works of Public Utility."

The section itself reads:

"Whenever any corporation constituted under the laws of the state for the construction of a railroad, plank road, or a canal for navigation * * * cannot agree with the owner of any land which may be wanted for its purchase, it shall be lawful for such corporation to apply to the judge of the district," etc. "* * * All claims for land or damages to the owner caused by the expropriation for the construction of any public works shall be barred by two years' prescription."

The objects and purposes of the Shreveport City Railway Company were declared in its charter to be:

"To 'construct and run one or more railroads by horse, mule or other power of propulsion than steam, along the Texas road to the corporation line, and through such street or streets or other localities, within the corporate limits of the city of Shreveport, and any future extension thereof, as the corporate authorities of Shreveport may permit, and to such other points without the limits of the said city, and within the parish of Caddo, either in continuous lines or branch roads or tracks, or both, as may be to the interests of and determined by the board of directors of the company, for the purpose of transporting passengers and property for hire on such terms and subject to such conditions and regulations as may be made for the government of said company."

Those of the Shreveport Belt Railway Company were declared to be:

"The construction, maintenance, equipping and operating of one or more street railroads by horse, mule, steam or any other power of propulsion through such street or streets within the corporate limits of the city of Shreveport, and any future extension thereof, as the corporate authorities of said city may permit, and through such other localities in said city, or any future extension thereof, as the said corporation may acquire, the rights of way and to such points without the limits of said city, and within the parish of Caddo, either in continuous lines or branch roads, or tracks or both, as said corporation through its board of directors may determine, and the carrying and transporting of passengers and freight for hire."

Those of the Shreveport Traction Company, or the consolidated company, were:

"To maintain and operate their said lines of railroad in the name of the 'Shreveport Traction Company,' and all the railroad property rights, privileges, franchises and immunities of the said Shreveport Belt Railway Company and the said Shreveport City Railroad Company."

It will be seen that the charter of both companies provided for the extension of their lines beyond the limits of the city of Shreveport for the transportation of both freight and passengers. The original companies fell by the express provisions of their respective charters under the classification of "railroad corporations." The moment the lines were extended beyond the limits of the city the companies would not be exclusively "street railroads," even if before that extension they were "as a matter of fact" operating street railways in that city. The city's rights, by reason of the contract relations which existed between them, may have continued notwithstanding the extension for the purposes of those relations and their regulation. Between the parties the city may have continued to hold the companies bound by the contract relations, but it did not control them as to their rights and obligations resulting from the extension beyond the city. The roads became bound to the general public by the rules and regulations and the law governing ordinary commercial railroad companies, certainly from that time on. In making the extension they were simply exercising their charter rights. Counsel of defendant in answer to a question from the bench said that the two companies, by declaring in the act of consolidation that it was made under Act No. 100, p. 125, of 1898, for the consolidation of street railways, had committed themselves to the fact that such was their legal character; that they by such consolidation had waived and forfeited their right to extend their lines; that in fact they had by nonuser abandoned (before the consolidation) their right of extension. But this was certainly not the case. The mere failure on the part of the companies to exercise their charter rights did not carry with it a surrender of those rights, and, even if they had done so, the state has not claimed a forfeiture of the rights, and she alone has the power to do so. Citizens' Bank v. Tax Collector, 32 La. Ann. 342; Grant v. Leach, 20 La. Ann. 332, 96 Am. Dec. 403. The policy of the state has been and is still to invite the construction of railroads, and not to cut off the right of doing so. The mere declaration that the consolidation was made under Act No. 100 of 1898 did not (as defendant contends) fix the character of the corporations as street railroads, when in reality they were not such in law. There was

no necessity for having had recourse to that act for that purpose, for there was a state law in existence at the time which authorized the consolidation of the companies. But, giving Act 100 of 1898 the effect which defendant claims it had of converting the two roads into street railroads, it was expressly declared in the fourth section of the act that under the consolidation the consolidated company had the right "to all other acts and things which said companies so consolidated or either of them might have done previous to said consolidation." In this instance both of the companies had at that time the reserved right to extend their line beyond the city limits, even if they were street railroads. The right to extend the lines did not originate in or result from the consolidation, but went into the consolidation as a pre-existing right.

Defendant insists that the term "street railroad" is not found in the statute conferring upon corporations the right of eminent domain; that the statutes conferring such power are in derogation of common right and should be strictly construed; that a "railroad" is something entirely separate and distinct from a "street railway" or "street railroad."

It is unquestionably true that "street railways" differ in some respects, in point of fact, in their operation, from the operation of the ordinary railroad, and therefore it was to be expected that rules and regulations governing one class should be sometimes modified as regards the other; but it by no means follows from that fact that both classes could not and should not be made to fall under the general term "railroad," leaving the one term or the other to be made to apply where by reason of some special circumstance it would appear proper or necessary which had been intended to be referred to. We think the term "railroad" is a broader term than "street railroad," or "street railway"; but that it does not exclude the latter kind of railroads, unless from the context of the law it should appear that the General Assembly intended to exclude or to refer specially to the latter class. The word "railroad" is the generic term, while the word "street railroad" applies to a "species" under the general term.

In Massachusetts Loan Co. v. Hamilton, 88 Fed. 588, 32 C. C. A. 46, in the Circuit Court of Appeals for the Ninth Circuit, it was said:

"If there is any doubt about the true meaning of a term used in a statute, the legislative intent it not to be determined from the particular expression, but from the general legislation of the state concerning the same subject-matter. it may in some connections have a broad and comprehensive meaning, and in others a narrow and limited meaning. * * * The meaning of the word must always depend upon the context and the legislative intent of the statute in which it is used, from the occasion and necessity of the law, from the mischief felt, and the object and remedy in view. Admitting, for the sake of argument, that some of the provisions of this section might be applicable to street railways, if they were alluded to or mentioned in the act, it is apparent, from the object, scope, and effect of the previous sections and the language at the head of the provisions in this section, that the legislative mind was directed to the character of roads operated by steam for the purposes of general traffic of carrying passengers and freight, and herein designated as the 'railroads of commerce,' as distinguished from street railways in the cities and towns for the convenience of passengers only."

In that case the court held, from a consideration of the statute, that it was the intention of the lawmaker to have the statute apply to "ordinary commercial railroads." The same process of reasoning causes us in the case at bar to conclude that the use of the word "railroad," in the section of the Revised Statutes conferring upon railroads the right of eminent domain, was not intended to exclude from the grant thereof railroads extending the limits of their lines for the purpose of transporting freight and passengers outside of cities and towns, by reason of the fact that parts of the roads were within the limits of cities.

In the present case "the language at the head of the provisions of the section," which in the case just cited influenced the court in holding that only ordinary commercial rail-

roads were intended to be referred to, and not street railways, so far from leading to the conclusion that the legislative mind was directed solely to the character of railroads operated by steam for the purpose of general traffic of carrying freight and passengers, as distinguished from street railways in the cities and towns for the conveyance of passengers only, leads us to the conclusion that it was not intended to make any such broad discrimination between the two classes, but to give to the term the broadest meaning it was susceptible of in aid of the object in view.

The heading preceding section 683 of the Revised Statutes, and also that preceding section 698, both show that the legislative mind was directed to works of public utility and advantage; the latter heading being, as we have seen, "To Provide for the Expropriation of lands for Railroads and Other Works of Public Utility." If street railroads were not specifically mentioned, it was because that species of railroad was not then in use. The policy of the state was at that time, as it is now, "to invite the construction through the state of works of public utility and advantage."

The plaintiff does not seek to substitute itself for the defendant as the owner of any part of defendant's property. All that it asks is to have the right to a crossing over defendant's right of way; a right of use at occasional periods; an easement (Telegraph Co. v. Railroad Co., 49 La. Ann. 1270, 22 South. 219; Railroad v. Hinds, 50 La. Ann. 781, 24 South. 287), which, in view of the fact that defendant is itself operating for public use and advantage, is subject to be altered to conform to future exigencies and contingencies (Civ. Code, art. 777; Telegraph Co. v. Railroad Co., 49 La. Ann. 1276, 1277, 22 South. 219).

We are of the opinion that the plaintiff, as a corporation for public utility and advantage, is entitled legally to the crossing or easement which it prays for. We have, therefore, to direct our attention to the question of the compensation which the defendant is entitled to demand. Most of the testimony adduced has reference to the compensation which it will be entitled to in the future, in the event that its necessities may require it to utilize, to the extent which it claims it will be required to do, the yard of the company. What those requirements will be in the future is conjectural, and the results which will flow from future conditions cannot be presently determined with any degree of certainty. We have said that the ultimate place and method of plaintiff's crossing will not be closed by the decree in this case, which deals only with the present. It will be open to modification by future conditions. The jury in this case viewed the crossing as now claimed, and also the surrounding premises, before reaching the conclusions it did as evidenced by its verdict.

The plaintiff has been, and will doubtless have to be, at considerable expense to make the crossing. Those expenses will have to be borne entirely by itself, as will also have to be the expense of maintaining the crossing. The plaintiff concedes this to be the case. Under present conditions the business of the defendant company will not be much impeded or interfered with, even if such interference could be demanded as a legal claim against the plaintiff, and we do not find that the value of defendant's property will be presently affected by granting plaintiff the easement it prays for.

We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed, at appellant's costs, under express reservation of the legal rights of the defendant which may arise under future changing conditions.

## On Rehearing.

LAND, J.  The sole demand of the plaintiff corporation is for a crossing over the right of way of the defendant corporation. No express legislative authority is required in. such cases.

"In the construction of railways it necessarily occurs that highways and other railways must be crossed, and, although the power is not expressly giver, it is necessarily inferred." Wood, Railway Law, p. 703, quoted in Railroad Co. v. Railroad Co.. 48 La. Ann. 860, 19 South. 869; 15 Cyc. 621.

Article 271 of the Constitution of 1898 provides that "every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad." Article 272 declares "railways" to be "public highways." In this sense a railway track and right of way is open to the public for railroad purposes. Our statutes authorizing the incorporation of "railroads" make no distinction between a commercial railroad and a street railroad. The latter must be incorporated as a "railroad," or not at all, and, if a railroad, then the power to cross other railroads is necessarily implied from its very creation. Of course, there are many differences between the regular railroad and the street railroad; but both are common carriers and quasi public corporations. Street railroads are usually, but not necessarily, confined to the use of the public streets. They may have in part a right of way of their own, and often expand into suburban and interurban railways. To deny such railways the right to cross other railroads would be to confine their expansion and usefulness within narrow limits. In the case at bar the plaintiff company, as authorized by its charter, is endeavoring to extend its line beyond the boundaries of the city of Shreveport. In order to do so it is necessary that it should cross the track of the defendant railroad. It has an im-plied right to do so as a means necessary to carry out the public purpose for which it was incorporated. It also has the constitutional right to do so as a railroad corporation. Ever since the adoption of the Revised Statutes of 1870 street railroads have been incorporated, organized, and operated under general provisions relating to "railroads." The latest act on this subject authorizes the creation of corporation "for the construction, working and maintenance of railroads." Act No. 154 of 1902. In the same way all of our expropriation statutes confer the right of eminent domain on "any corporation constituted under the laws of this state for the construction of railroads." Section 1479 of the Revised Statutes of 1870; Act No. 96, p. 142, of 1896; Act No. 227, p. 457, of 1902. It follows, we think, that street railroads and electric railroads are within the generic term "railroad" as used in our Constitution and statutes, in so far as the provisions of the same are applicable to that kind of railway. Prior to 1898 we find no special legislation relative to street railroads. As to the right of crossing the tracks of other railroads, declared to be "public highways" by the organic law, there is no difference in principle between a street railroad and a commercial railroad. The necessity is the same in both cases, and the reason and spirit of the law is the same. A recent act of the Legislature empowered police juries to grant and sell franchises on and across the public roads and highways for the construction of railways using electric or any other motive power than steam. Act No. 48, p. 63, of 1906. The plaintiff has acquired such a franchise; but its exercise is impossible, if plaintiff has not the right to cross intervening railroad tracks. We think that the right of crossing each other's tracks is vested in all railroads, not only by necessary implication, but by express

law. It is not necessary to decide whether street railroads have the power of eminent domain in other respects.

The two constituent companies were properly consolidated as street railroads under Act 100 of 1898, and under the express terms of the statute the consolidated corporation became invested with the charter franchises of both, including the right to extend its lines beyond the limits of the city of Shreveport. The contention that a street railroad must be confined to the municipal highways and cannot extend its lines beyond the boundaries of the municipality is not supported by anything in the legislation of this state.

The franchises of such roads are derived from their charters, and not from city ordinances. It is true that such roads, like the regular railroads, cannot use the streets without municipal license; but no law forbids the construction of any railroad for any public purposes on its own grounds, either within or without the limits of a town or city. To confine all railways not using steam within municipal limits would be an anachronism in this day of rapid transit by means of suburban and interurban lines of railway. The Legislature, by Act 48 of 1906, already quoted, has opened all the public roads and highways in the parishes to such enterprises. There is nothing in our statutes which forbids the combination of street and other railroads in the same charter. All railroads in this state have always been incorporated and organized under the same statute. Even if the law has been otherwise, the charters now in question were validated by Act No. 120, p. 281, of 1904.

Defendant in the answer says:

"That the proposed crossing is at an extremely dangerous place, and a crossing at grade should be denied. That your defendant has no objection to an overhead crossing by said plaintiff, and has requested it to so cross the said right of way; but the said plaintiff has refused to accept such crossing. That your defendant has further offered to let the said plaintiff cross at grade free of cost, if it would agree to remove such crossing after 6 months on 30 days' notice; it being the purpose of your defendant to build and equip the said grounds at this point as a part of its yards, and which will be prevented if a crossing at grade is permitted."

There is in this state no legislation regulating railroad crossings. We are not advised that the railroad commission has enacted any rules on the subject-matter. Grade crossings are customary, and there is no statute or regulation requiring overhead crossings, however necessary they may be to the public safety in any particular case. We cannot legislate on the subject, nor can we decide cases on a state of facts which has not as yet arisen. We have exhausted our jurisdiction by reserving the legal rights of the defendant which may arise under future changing conditions. In the meantime legislation or regulations as to railroad crossings may relieve the anticipated dangerous conditions, should they arise.

It is therefore ordered that our former decree herein be reinstated and made the final judgment of the court.

MONROE, J. I am of opinion that plaintiff is a street railroad company, and as such is not vested with the power of eminent domain which it now seeks to exercise. I therefore dissent.