(47 South. 887.)

No. 17,140.

STEPHENS v. LOUISIANA LONG LEAF LUMBER CO.

(Dec. 14, 1908.)

1. RAILROADS (§ 256*)—INJURIES TO SERVANT —COMPANIES AND PERSONS LIABLE.

There are two companies, and not one. The railroad company was operating for its own account under a charter. It was a separate organization. The charter is not assailed by pleadings. Even if it was not a company operating under a regular charter, the incorporators would be liable as partners, and not the defendant company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 789, 790; Dec. Dig. § 256.*]

2. MASTER AND SERVANT (§ 99*)—INJURIES TO SERVANT—PERSONS LIABLE.

The railroad company was not sued. There was no solidarity between the two companies. The acts of negligence alleged were not concurrent, and there was no trespass growing out of a common asserted offense. The company not sued cannot be held liable.

One company loaded the car: the other, the railroad company, is a common carrier.

The accident happened while the loaded car was in charge of the carrier.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 165; Dec. Dig. § 99.*]

3. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—ACTIONS — EVIDENCE — SUFFICIENCY.

The preponderance of evidence does not fix the liability of the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 962; Dec. Dig. § 278.*]

4. RAILROADS (§ 32*)—FORFEITURE OF CHARTER—FAILURE TO COMPLETE ROAD.

The fact that part of the road has not been completed does not leave it open to attack as null and void.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 65; Dec. Dig. § 32.*]

5. LIABILITY FOR DEATH OF BRAKEMAN.

The cars had been properly loaded. The railroad received them, and, if any one was liable, it was the railroad company, and not the defendant.

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; Samuel Jamison Henry, Judge.

Action by J. H. Stephens, dative tutor, against the Louisiana Long Leaf Lumber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

So Relle & Boone and Scarborough & Carver, for appellant. Williams & Prewitt and Breazeale & Breazeale, for appellee.

BREAUX, C. J. Chester Green was killed in the parish of Natchitoches at his post of duty as brakeman on the railroad known as the "Victoria, Fisher & Western Railroad."

His work consisted in switching the cars loaded with logs. He, in the discharge of his duty as brakeman, was standing on a car of a log train with his brake staff in the

socket of the car, ready to put the brakes on, when a log fell from the third car, the rear end of the log train. The falling log struck against the stump at the forward end near the engine, and the other end caught the bunk of the car immediately behind the car from which the log fell. The logs on the car struck by the falling log which was thrown back from the stump were scattered on either side of the car; the violence and force caused the track to spread and force two of the cars from the track. Green in seeking safety, either fell or was thrown against the truck and instantly killed.

The complaint of plaintiff is that this log was not fastened or chained to secure it; it was piled up on other logs with nothing to secure it. The complaint further is that the cars were not equipped in accordance with the regulations of the Railroad Commission of Louisiana.

The deceased was 23 years of age. He had two children.

The mother of these children died about two months after the father's death.

Plaintiff for these children claims $20,000 damages because of the death of their father, caused, as plaintiff alleges, by defendants' negligence.

The defendants' pleadings admit the death of Green as alleged, but deny liability. They aver that the deceased was an employé of the Victoria, Fisher & Western Railroad Company, and not of the defendant company; that the railroad company owned and operated the railroad. The defendants deny all negligence, and allege that the accident was unavoidable; that it was a hazardous occupation, and that Green had assumed the risk of which he had knowledge.

There are special cars to carry logs. Each car consists of four pairs of trucks, two at each end; and two bunks, one at each end. The two ends of the car and the two pairs of trucks were connected by two reaches and two sway bars. The sway bars run from one bunk to the other, and are fastened in the end of each bunk at the end of the car; and the reaches run through the end of the bunks to the drawheads at each end of the car. A toggle chain is fastened to the sway bar to hold the logs on and near the flooring of the car. It is fastened to the sway bar on one side of the car, and passed over the logs to the other side and made fast.

The bunks on which the logs rest are about 10 feet in length, and about 10 by 10 inches square. The reaches are 6 by 8 inches, and about 20 feet long, and there is no other flooring or platform on any log car.

The track and roadbed where the accident happened were very rough.

One of the witnesses for plaintiff (who was the top loader and in charge of the loading of the cars) testified that the accident was caused in his judgment by the uneven and rough track; "badly jointed rails," i. e., uneven rails at the joints, causing the cars to sway and vibrate, and thereby throwing the log to the ground and striking the stump, the rear end of it striking the rear end of the third car and bringing on the fatal casualty.

The manner of loading was as follows:

The logs were placed on the bed of the car from sway bar to sway bar; then logs were corded above. They were in pyramidal shape. The lower logs on the platform of the car were toggled by a chain which went, as before stated, from the sway bar on one side over the logs and was fastened to the sway bar on the other side. Other logs were placed above the toggle chain to add weight and cause the lower logs to settle. The log that fell was one of the logs at the top of the car. There was no fastening on the logs above the toggle chain. The chain is drawn just tight enough so that when the top logs are placed on it it settles

down and becomes more solid and safer for transportation. If a chain were passed over the top logs it might become loose as the logs settle on the car, and if a log should become dislodged and start to roll off it would likely break the chain.

This witness for plaintiff, the one above alluded to, states that the cars were well loaded, securely toggled; good, safe loads, as well loaded as such cars can be.

The testimony further is that when a car is not well loaded the car is not accepted; it is cut off by the railroad company until the defect in loading is corrected.

The weight of the testimony shows that these log cars were loaded as usual and according to the methods followed in loading log cars. Nothing shows negligence in the manner of loading or in the manner the logs were made secure on the car. In all respects the load was as safe as such loads usually are. The toggle chain was made fast as is usual, and there was no fault found with it as fastened.

On some cars two toggle chains are used, but witnesses were positive that one toggle chain can be used with as much safety.

One of plaintiff's witnesses wished to state some particulars regarding a prediction that was made at the time that the car was leaving on the way to the mill, that at a certain place on the road there would be an accident.

Whether it was that he apprehended that there would be an accident because of some defect in the roadbed or in the track, or because of the manner in which the car was loaded, we are not informed. He wished to state that which was said to him by some one near at the time.

In this he was stopped by the court, and he desisted from giving any further testimony.

Even if the statement that he wished to make was not as inadmissible as the court deemed, nothing prevented him from continuing his testimony and relating in what respect the defect consisted that led him to confidently predict, as he states, that there would be an accident at a particular spot on the road.

The judgment of the district court rejected plaintiff's demand.

Plaintiff filed a motion for a new trial in that court, alleging that the grounds of the judgment were that the negligence of the Victoria, Fisher & Western Railroad Company caused the death of Green, and that the court held that this corporation is separate and distinct ànd not connected with the defendant company.

Special reference is made to this motion, because it shows the grounds of the judgment of the district court not denied in this court.

There are two propositions advanced by plaintiff's learned counsel, which attract our attention at this time:

The first, that the Victoria, Fisher & Western Railroad Company is substantially identical with the defendant corporation. This is a proposition of plaintiff in answer to the contention of defendant that each corporation is separate and distinct.

The other proposition is, again on the part of plaintiff, that both companies, even if they are separate companies, are liable as cotrespassers and bound in solido, and, in consequence, it was immaterial whether the railroad company was not made a party.

To maintain this proposition, plaintiff's ground, in the first place, is that he had a right, though not pleaded, to prove that the charter of incorporation of the Victoria, Fisher & Western Railroad Company is null, as the defendant corporation was seeking to shield itself under the terms of this charter; in the second place, that the charter contains provisions with which the Victoria, Fisher & Western Railroad Company

has not complied, and that in consequence it cannot claim protection under its charter.

To decide these propositions, we have reviewed the facts relating to the incorporation of the railroad or tramway. They are: That several of the shareholders, with those who were not shareholders of the defendant company, formed a company to construct this railway or tramway from the Natchitoches to the Sabine river.

It appears that the Louisiana Long Leaf Lumber Company owned two large sawmills: One situated in the parish of Natchitoches, at Victoria Station on the Texas & Pacific Railroad; the other, about 17 miles distant, situated in Sabine, at Fisher Station on the Kansas City Railroad.

The Victoria, Fisher & Western Railroad connects with these two main lines above named, in addition to connecting the two main lines on the extension from Fisher Station toward the Sabine river to within a few miles of the timber of the Fisher Mill.

The main purpose of this railway or tramway was to carry logs to the two sawmills, and other freight, and to receive from the two mills and carry away their products to be shipped on one or the other of the main roads before mentioned.

The charter of the company forms part of the evidence.

It states the name of the company; its date, that is, November 5, 1902; its purpose; the officers of the company on whom service was to be served; its domicile; the amount of the capital stock; cash payments are provided for, for the shares; the number of directors; when to be elected; how the shareholders were to vote; and the mode of liquidation of the company. The charter is signed by the members of the company, and the shares of each member are given opposite his name. It was approved by the district attorney of the district, and was forwarded to the office of the Secretary of State.

The spur of the road on which the accident occurred was built by the defendant railroad company, had been in use three or four months before the accident, and it was in use two months afterward, when it was taken up and laid elsewhere, as it was needed at that place.

The uncontradicted evidence shows that the defendant company pays the railroad company $2 per thousand for transporting logs; that the railroad company pays the train crew operating on it; that its cars are labeled with its initials; that the officers are not the same, at any rate, one of them, the vice president, is not vice president of both companies. The auditor is a different officer from the auditor of defendant.

No question but that the main purpose was to carry logs from the woods to the defendant company.

The following states the situation between the two companies as testified to, to wit:

In case the defendant company loses this suit, it will be its loss. If the railroad company were to be cast, if it were a party defendant, it would be its loss and it would have to pay.

This is stated to show that the interest of each, as shown by the testimony, is separate.

We will state further in this connection that each road keeps separate books; that dividends are declared by each; bills of lading are issued by the railroad for freight received.

It was also shown in evidence that, although the superintendent of both industries is the same man, he consulted with and obtained orders from the railroad company's board of directors in matter of the railroad's interest.

In our opinion, the railroad company is a separate corporation and not liable, as it is not a party to the suit.

Although the charter is not carefully

drawn, it is not an absolute nullity by any means. It has all of the essentials of a charter.

The first ground of attack in argument by plaintiff against this charter is that it contains no provision to warrant the building and operation of spur tracks, and, as this accident happened on one of the spur tracks, the contention is that the act of incorporation does not protect the defendant corporation; as to that matter, that it does not protect any corporation.

The fact that members of the railroad company went beyond the terms of the charter does not render it possible to hold the defendant company for their illegal acts, if illegal acts they are. They were the owners of the main track; they did not lose their autonomy as a company by extending these side lines a mile or two into the timber belonging to the defendant. They were hauling the defendant's logs, we have seen, at so much per thousand, at their own expense and on their own road. Extending facilities for hauling to the track was not an act of the defendant corporation. The main track was built entirely at the expense of the Victoria, Fisher & Western Railroad Company. If not liable as a corporation, it was at least liable as a partnership, or the members personally. The defendant company is a separate company, and cannot be rendered liable by the individual acts (if they were individual acts) of other persons.

The further contention is that the railroad company has not completed its road to the Sabine river; that some 15 miles from Victoria to Natchitoches are still not constructed.

The fact that the railroad has not completed its road can give plaintiff no right to recover on that ground. It cannot be on that ground considered that the corporation was illegally organized. The incomplete state of the railroad is not ground of forfeiture of the charter. Shreveport Traction Co. v. Kansas City S. & G. R. Co., 119 La. 772, 44 South. 457.

The forfeiture of a charter is an authority that lies with the officers of the state.

The leading case upon the subject is State v. Vicksburg, Shreveport & Pacific R. R. Co., 44 La. Ann. 981, 11 South. 865.

The same point was decided in Shreveport T. Co. v. Kansas City S. & G. R. Co., 119 La. 772, 44 South. 457.

Our conclusion on this point is that the defendant company is not liable in damages occasioned by the railroad company.

The next point of plaintiff is that corporations are bound in solido for a tort.

We have decided the railroad company is not a party.

Witnesses for plaintiff, one in particular, testified that the poor condition of the track was the cause of the accident.

We have not found the solidarity of liability of the defendant and of the railroad company, the latter being an independent company. That being the case, the railroad company cannot be found liable, and the defendant company is not liable for the acts of the railroad company, not being bound in solido.

Even if these parties were bound, they are not obliged alike. The railroad company owed a duty to its employé, the deceased, to which the defendant cannot be held. The service was separate and distinct. Each was responsible for the consequence of its own acts, but neither was bound for the acts of the other.

In order to hold them both bound, it must appear that they have participated in the act and that it caused a loss.

They have not participated in a similar act.

In the Hollins Case, 119 La. 418, 44 South. 159, one company owned and was operating another company. The accident happened on the road of one company by one of the trains operated by another company. There were

very close relations between the two—a sort of Siamese twin affair. There was a common cause between these roads to such an extent that the court found solidarity of liability between them.

Plaintiff seeks here to fix similar relations, but it is not evident that it exists between two independent companies at work in different branches of industry, one in manufacturing trees into lumber, and the other, a common carrier, engaged in carrying freight for all comers that present themselves.

It is true that the bulk of the carrying was done for the defendant company, but it remains that it carried freight for others and owned a few box cars; it formed some sort of connection with the two main truck roads with which it connected; that is, with the Texas & Pacific and the Kansas City Southern.

We pass from the subject of joint and solidary liability to examine the testimony in order to ascertain if the defendant company, without reference to the railroad company, can be held liable in damages.

The plaintiff failed to substantiate the charge that the car was negligently loaded. Much was said in the testimony about the toggle chains by one or two witnesses, and it was said by them that two of these chains should have been used instead of one. This contention is not sustained by the preponderance of the testimony. It was the consensus of opinion (except these two above referred to) of the witnesses that one toggle chain, properly put on, sufficed. That was on the theory that one of those chains at the midway of the car was better calculated to let the logs follow the motions and vibrations of the moving car and thereby settle down and become more secure. The idea was that the vibration of the sway bar was communicated to the logs; that this would not be felt if the logs were tightly chained down at each end to the bunks of the car, and an accident would be more likely to happen.

It corresponds with the idea of passengers on trains who think, many of them, that the easy seat is in the middle of the car as far away as possible from the wheels.

We have not found that there was negligence or defect proven in the way that the car was loaded.

The plaintiff feeling kindly to the children of the deceased, who in their tender years are left without parents qualified as their dative tutor and brought this suit.

Under some governments, large, industrial enterprises are made to provide a fund, to which workmen contribute, to soften the fate of those who are the victims of an accident for which no one can be held.

It may well be that something of the kind should be done everywhere.

We cannot hold the railroad company liable, it not being a party to the suit.

We cannot hold the defendant company liable, it not being evident that its negligence caused the accident.

The law and the evidence being in favor of the defendant and against the plaintiff, the judgment appealed from is affirmed.